*63
 
 Marshall, C. J.
 

 The Court of Appeals having in all respects affirmed the judgment of the court of common pleas, this error proceeding in this court brings in review the question of the soundness of the judgment of the court of common pleas, and that judgment must be the basis of our inquiry.
 

 Counsel for the tax commission, adopting this view of the matter, have made three principal assignments of error:
 

 First. That the court of common pleas did not; render a final judgment or find the true value in! money of the company’s property in Ohio and that: it was error to remand the cause to the tax com-: mission for further proceedings.
 

 Second. That the court of common pleas erred in declaring as matter of law that income in Ohio from the property of the utility should be considered in relation to the entire value of plaintiff in error’s property and not with reference alone to its separate property in this state.
 

 Third. That the court of common pleas did not determine the case by the rule of clear and convincing evidence, as required by Section 5611-2, General Code.
 

 These assignments of error will be considered in their order.
 

 In discussing the first of these questions, it is necessary to inquire into the character of the proceeding in the court of common pleas, as to whether it was an appeal or an error proceeding. The jurisdiction to hear the proceeding in the court of common pleas is conferred and governed by Section 5611-2, General Code, the pertinent portions of which are as follows:
 

 
 *64
 
 “The proceeding to obtain such reversal, vacation, or modification shall’be by petition in error filed in the court of common pleas, instituted by the person or persons in whose name the property is listed for taxation * * * and such case the court shall review the determination of the commission as to all the property in each such county and the apportionment of the value thereof * * * and the county auditor of the county in which such petition is filed, and the tax commission of Ohio, shall be made defendants. * * * The tax commission shall, upon written demand of the person or persons, filing such petition, made at or before the filing thereof, deliver to such person or persons within thirty days thereafter a certified transcript of the final order and the evidence in the proceedings upon which such order is based, which transcript shall forthwith be filed by the plaintiff in error with the clerk of the court in which such proceeding is pending, and the court may call witnesses and consider other evidence in addition to such transcript in the hearing of such petition in error. * * * No determination of the tax commission as to the value of property for taxation shall be reversed, vacated, or modified unless it is shown by clear and convincing evidence that the value of the property, as determined by the tax commission, is not the true value in money of such property.”
 

 It will be seen that the proceeding in the common pleas court is begun by filing a petition in error which corresponds to the usual procedure in error cases. Nowhere is the word “appeal” used, and the only provision in that section which might
 
 *65
 
 indicate appeal procedure is the provision for calling witnesses and considering other evidence in addition to the transcript from the tax commission. But even in that provision it refers to the introduction of additional evidence as a part of the hearing upon the petition in error. It will further be observed that the court of common pleas may
 
 ¡
 
 reverse, vacate or modify. A reversal or vacation would not necessarily be a final determination of the matter, and on the other hand a modification clearly contemplates a final judgment. It would seem, therefore, that the court of common pleas,' in its discretion, might either make a finding of value and render final judgment or reverse and-remand. It must of course be a sound judicial discretion and should only render final judgment where the testimony is such as to require no further data or information and where the case is one of sufficient clearness to dispense with the employment of taxation experts.
 

 The valuation of utilities and more especially the valuation of property of utilities where only a part of the property is located in this state is a matter of unusual difficulty and this doubtless accounts for the matter being placed under the jurisdiction of the tax commission, which has better facilities for making the inquiry than the usual taxing authorities in the various counties. The tax commission has facilities which are not available to a judicial tribunal, and by virtue of the additional facilities of the commission and its experience in such matters we are not able to say as matter of law that it was error upon the
 
 *66
 
 part of the common pleas court to refuse to make the inquiry and the final determination of value.
 

 It is further contended that the court of common pleas did not make findings covering all of the ultimate facts necessary to rendition of judgment and that for this reason the cause should be remanded to the court of common pleas for additional findings of fact. It is true that the commission requested separate findings of fact and conclusions of law, and upon judgment being rendered such findings of fact and conclusions of law were stated, but not as fully as desired by the commission, and thereupon the commission made a motion for further and additional findings of fact, which were evidently refused. It will be seen, however, that the additional findings of fact requested relate entirely to the duty of the court of common pleas to determine the valuation of the property. This appears in the motion for additional findings, set forth in the statement of facts herein. This court has heretofore declared in
 
 Cleveland Produce Co.
 
 v.
 
 Dennert,
 
 104 Ohio St., 149, 135 N. E., 531, that the provisions of Section 11470, General Code, are mandatory and that a refusal to make findings upon request is reversible error..
 

 If the requests for findings of fact related to other ultimate facts to which the tax commission was entitled and upon which the judgment of the court of common pleas necessarily rested, instead of the request of the commission covering a matter to which it was not entitled, as heretofore found, there would be good grounds for remanding the cause to the court of common pleas. Since it
 
 *67
 
 clearly appears that the allowance of the motion for additional findings would have given to the commission that to which it was not entitled, the overruling of the motion is not reversible error.
 

 The second assignment of error, that the common pleas court erred in refusing to allocate the entire net revenue of gas sold in the state of Ohio to the tangible property located in Ohio, as affecting the value of such property, will next be considered. This assignment of error arises out of the finding numbered “second” in the journal entry of the common pleas court, and that finding is necessarily based upon the finding of fact numbered “first” in that entry.
 

 It is claimed by counsel for the utility that, although the tax commission did not give in detail its reasons for its conclusion, and did not state any rules by which its conclusions were reached, that inasmuch as the income allocated to Ohio in the report made by the company was approximately one-fifth of the entire income of the utility in all states, and that the valuation of the Ohio property as found by the tax commission bears the same relative proportion to the entire taxable property of the utility in all states, it sufficiently appears that this was the method of calculation adopted by the tax commission. Counsel for the tax commission, while not definitely admitting this method of calculation, nevertheless bases its entire argument upon the assumption that that method would not be erroneous.
 

 This legal question turns upon the proper interpretation of Section 5424, General Code, as follows:
 

 
 *68
 
 “In determining the value of the property of each such public utility to be assessed and taxed within the state, the commission shall be guided by the value' of the property as determined by the information contained . in the sworn statements made by the public utility to the commission and such other evidence and rules as will enable it to arrive at the true value in money of the entire property of such public utility within this state, in the proportion which the value of such property bears to the value of the entire property of such public utility.”
 

 The sworn statement of the utility referred to in that section is required by Section 5422, Genera] Code, and that statement was furnished in detail and was no doubt the basis of the tax commission’s finding. Other evidence was produced, but it is apparent that no “rules” were employed by the tax commission, as contemplated in Section 5424, and the commission has frankly stated that it has formulated no rules and that it desires that this court will prescribe proper rules to govern its action in the event this judgment shall be affirmed and the proceeding remanded to the commission for further action.
 

 The sworn statement of the utility contains the information that there is located in the state of Ohio real and personal property having, according to the books of the company, a total valuation of $1,224,201.11, and that the total property of all kinds in all states has a book value of $28,749,649.48. These figures are tendered by the utility as showing the true relation between the valuations in the state of Ohio, on the one hand, and the valúa
 
 *69
 
 tion in. all states, on the other hand, and it is further insisted
 
 by
 
 the utility that in the absence of it being made to appear to the commission that these relative valuations are erroneous, or that the total valuation of all property in all states is higher than that shown in the report, that in no event should the valuation for purposes of taxation in Ohio be more than $1,224,201.11.
 

 It is further the contention of the utility that the valuation shown by the books is in excess of the true value in money, and this contention finds support in the fact that the average market value of its capital stock for the year 1920 was only $24,783,000, and while it is not claimed that this is an infallible criterion, that it is nevertheless a
 
 datum
 
 and a guide which should be given consideration.
 

 Before proceeding to an analytical discussion of Section 5424, General Code, it is proper to state a few general principles which have been declared by this court and the Supreme Court of the United States defining the elements which may properly enter into the valuation of property for purposes of taxation.
 

 The summary of the report of the utility on file in this case shows that the utility owns and has located in Ohio credits and investments classed as intangible property and that it has also certain real and personal property which are classed as tangible assets, and it also shows that the ratio between the states is not the same on all kinds and classes of property. That is to say, there is apparently a smaller proportion of tangible assets in the state of Ohio than of the intangible assets.
 

 
 *70
 
 In appraising the tangible assets located in Ohio, the commission should take into consideration not merely the market value of the property nor its value as property separate and distinct from the purposes for which it is employed, nor what it would be worth if the distribution systems in Ohio were separated from the parent system and to be sold as separate and distinct property unaffected by its earning power, and unaffected by the increased earning power by reason of its being a part of a larger system located in different states.
 

 This court has heretofore held in
 
 State ex rel.
 
 v.
 
 Jones, Auditor,
 
 51 Ohio St., 492, at page 512, 37 N. E., 945, 951, as follows:
 

 “If by reason of the good will of the concern, or the skill, experience, and energy with which its business is conducted, the market value of the capital stock is largely increased, whereby the value of the tangible property of the corporation, considered as an entire plant, acquires a greater market value than it otherwise would have had, it cannot properly be said not to be its true value in money within the meaning of the Constitution, because good will and other elements indirectly entered into its value. The market value of property is what it will bring when sold as such property is ordinarily sold in the community where it is situated; and the fact that it is its market value cannot be questioned because attributed somewhat to good will, franchise, skillful management of the property, or any other legitimate agency.”
 

 The learned judge then proceeds to discuss
 
 *71
 
 a building, -well located, with desirable tenants, a good reputation, superior service, and under good management, and points out that all these elements enter into the true value in money of such a building, and further states:
 

 “We discover no satisfactory reason why the same rule should not apply to the valuation of corporate property — why the selling value of the capital stock, as affected by the good will of the business, should be excluded from the consideration of the board of appraisers.”
 

 Again upon page 511 of the opinion (37 N. E., 950):
 

 “But the property of a corporation may be regarded in the aggregate, as a unit, an entirety, as a plant designed for a specific object; and its value may be estimated not in parts, but taken as a whole. If the market value — perhaps the closest approximation to the true value in money — of the corporate property as a whole, were inquired into, the market value of the capital stock would become a controlling factor in fixing the value of the property.”
 

 Much more appears in that opinion to the same effect, and it is the spirit of that opinion that the true value in money of any property is affected by the same considerations throughout as would render the property desirable as an investment.
 

 This subject received further attention at the hands of this court in
 
 State ex rel.
 
 v.
 
 Halliday,
 
 61 Ohio St., 352, at page 379 of the opinion (56 N. E., 118, 123, 49 L. R. A., 427):
 

 “That the income-producing capacity of an article is an important factor in determining its value
 
 *72
 
 is so obvious as to seem beyond tbe bounds of controversy. This doctrine was sanctioned in its application to real estate in
 
 State
 
 v.
 
 Jones, Auditor,
 
 51 Ohio St., 513, and in
 
 Express Co.
 
 v.
 
 Ohio,
 
 166 U. S., 220, and no reason is perceived nor has any been assigned why a principle so plain and just should not be applied universally to all species of property. This is the first inquiry that a prudent prospective purchaser would make.”
 

 It is true that the Ohio cases quoted from involved the appraisement of property of express companies and telephone companies respectively, and it is also true that those cases come under the provisions of Section 5452, General Code, instead of 5424, General Code, and that the former section dealing with express companies and telephone companies is slightly different from the latter section dealing with gas and other utilities. The former section differs from the latter in containing the following additional language: •
 

 “The commission shall be guided by the value of the property as determined by the value of the entire capital stock of the companies.”
 

 Notwithstanding that additional language, it is impossible to carefully read the opinion of Dickman, c. J., in 51 Ohio State, and of Bradbury, C. J., in 61 Ohio State, without being convinced that the reasoning of those opinions has equal force, whether the valuation is to be arrived at through the medium of an inquiry into the value of the capital stock, or whether it is arrived at by a more direct inquiry. In either case, and in all cases, it is a question of the true value in money of tangible property affected and influenced by
 
 *73
 
 any and all conditions and circumstances which tend to give it a value greater than its intrinsic worth, or greater than such property would have if segregated from its connection with a profitable going concern.
 

 We are unable therefore to see any substantial distinction between those two sections, and we are of the opinion that the tax commission should follow practically the same course in appraising a gas utility as it would follow if appraising property of an express company or a telephone company.
 

 One important difference between natural gas utilities and those utilities where the product is manufactured rather than produced by nature is that the hazards of the natural gas utility are greater and in fact cannot be estimated upon any rational basis. Where the product of a utility is manufactured, the cost can be calculated and depreciation and amortization may be calculated upon some rational basis, but the depletion of natural gas fields is purely within the realm of speculation. For this reason it is difficult to formulate any rule for determining the influence of profits upon the valuation of the property of a natural gas utility.
 

 In this case it must be recognized that interstate commerce is involved. This taxpayer is a public utility producing gas in West Virginia and Pennsylvania and delivering the same in Ohio and is therefore clearly engaged in interstate commerce.
 
 Pennsylvania Gas Co.
 
 v.
 
 Public Service Comm. of N. Y.,
 
 252 U. S., 23, 40 Sup. Ct., 279, 64 L. Ed., 434;
 
 West, Atty. Gen.,
 
 v.
 
 Kansas Natural
 
 
 *74
 

 Gas Co.,
 
 221 U. S., 229, 31 Sup. Ct., 564, 55 L. Ed., 716, 35 L. R. A. (N. S.), 1193;
 
 Haskel
 
 v.
 
 Kansas Natural Gas Co.,
 
 224 U. S., 217, 32 Sup. Ct., 442, 56 L. Ed., 738;
 
 W. U. Tel. Co.
 
 v.
 
 Foster,
 
 247 U. S., 105, 38 Sup. Ct., 438, 62 L. Ed., 1006, 1 A. L. R, 1278. The state of Ohio does not therefore have the right to impose valuations as a basis of taxation in this state, which would impose improper burdens upon interstate commerce.
 
 Fargo
 
 v.
 
 Hart,
 
 193 U. S., 490, 24 Sup. Ct., 498, 48 L. Ed., 761;
 
 Union Tank Line Co.
 
 v.
 
 Wright, Comptroller General,
 
 249 U. S., 275, 39 Sup. Ct., 276, 63 L. Ed., 602. In both the foregoing cases it was decided by the Supreme Court of the United States that personal property situated outside of the state, belonging to a public utility having its residence outside of the state, but engaged in interstate commerce extending into the state, cannot be taken into account in fixing the value for taxation of its property within the state, and it was further decided that to proportion the value of the property of such utility on a mileage basis is an arbitrary method of fixing values and a denial of due process.
 

 Another important principle to be observed is that which forbids any attempt to levy taxes upon property beyond the territorial boundaries of the state. This is a general principle which has application to all forms of taxation. It is inherent and concomitant with the dual form of our government as established by the fathers^ which recognizes the independent sovereignty of the states and has always been recognized by the courts of the states and particularly emphasized by many of the decisions of the Supreme Court of the United
 
 *75
 
 States. This has been placed upon grounds of the injunctions of the due process clause of the federal Constitution, and many cases have been decided with special reference to the property of public utilities engaged in interstate commerce.
 
 Fargo
 
 v.
 
 Hart,
 
 193 U. S., 490, 24 Sup. Ct., 498, 48 L. Ed., 761;
 
 Louisville & Jeffersonville Ferry Co.
 
 v.
 
 Kentucky,
 
 188 U. S., 385, 23 Sup. Ct., 463, 47 L. Ed., 513;
 
 Union Refrigerator Transit Co.
 
 v.
 
 Kentucky,
 
 199 U. S., 194, 26 Sup. Ct., 36, 50 L. Ed., 150, 4 Ann Cas., 493;
 
 Wallace
 
 v.
 
 Hines, Director General of Railroads,
 
 253 U. S., 66, 40 Sup. Ct., 435, 64 L. Ed., 782.
 

 Upon principle as well as upon the authority of those cases we adhere to the doctrine that in the construction of Section 54'24, General Code, there must be no taxation of property not “within this state.”
 

 The conclusion we have reached on the foregoing subject is an application of the principles of situs as applied to intangible property upon which taxes are sought to be levied.
 

 It has been decided not only by this court but also by the Supreme Court of the United States that in valuing property “within the state” it is proper to take into consideration many kinds of intangible property which are necessary adjuncts to all tangible property of the company where-ever located and which therefore materially increase the value of the tangible property beyond its separate intrinsic or market value.
 

 In dealing with this subject Mr. Justice Brewer, in
 
 Adams Express Co.
 
 v.
 
 Ohio,
 
 166 U. S., at page
 
 *76
 
 219, 17 Sup. Ct., 605, 41 L. Ed., 965, makes the following observations:
 

 “Now, whenever separate articles of tangible property are joined together, not simply by a unity of ownership, but in a unity of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property. Upon what theory of substantial right can it be adjudged that the value of this intangible property must be excluded from the tax lists, and the only property placed thereon be the separate pieces of tangible property?”
 

 The next question to be determined relative to the intangible property is its situs. This subject has also been dealt with by Mr. Justice Brewer in the following language found at page 223 (17 Sup. Ct., 607):
 

 “"Where is the situs of this intangible property? Is it simply where its home office is, where is found the central directing thought which controls the worldngs of the great machine, or in the state which gave it its corporate franchise; or is that intangible property distributed wherever its tangible property is located and its work is done? Clearly, as we think, the latter.”
 

 In the case at bar the report shows that the utility owned a large amount of Liberty bonds. These should of course not be taxed as property by any state authorities and should not be reckoned with in determining the value of tangible property.
 

 The latest amendments to the Ohio statutes under consideration have been made since the decisions of this court in 51 and 61 Ohio State Reports and
 
 *77
 
 the decisions of the Supreme Court of the United States in 165 and 166 United States Reports, and it may be assumed that the Legislature was satisfied with the rules and principles declared in those eases and which we hereby reaffirm in this case. ' '■' I
 

 No other principles need be discussed in laying the foundations for disposition of this case. It only remains to apply the principles already declared to the present controversy. Section 5424 requires that the total value in money of the whole property of the utility, located in the three states, should be ascertained, and then the proportion of the property in Ohio to the whole property of the company in all states should be ascertained, and that the proportion thus found would be the value in money of the property located in Ohio.
 

 As to the manner whereby the commission shall apportion the valuation of the entire property among the states where its constituent parts are located, the Legislature has not specifically provided, but it is provided by Section 5424, General Code, that the commission shall be guided by the information contained in the sworn statements made by the utility to the tax commission, “and such other evidence and rules as will enable it to arrive at the true value in money,” etc.
 

 In valuing property for purposes of general taxation, the taxing authorities cannot make a separate appraisement of municipal and other franchises, the good will of the business, and many other features which are inseparable from property, but which nevertheless give additional value to those forms of property which may be valued and
 
 *78
 
 therefore taxed, but under the principles hereinbefore discussed it is proper that all of those forms of intangible property may be considered by taxing authorities as affecting the value in money of those forms of property which may be valued and taxed. In determining the value of the entire property all those intangible elements enter into the inquiry, and the Ohio tax commission may properly consider not only the franchises in Ohio but the franchises in other states and the good will and other features which affect the valuation of the property as a whole. By resorting to such process it inevitably follows that franchises beyond the state enter into the money value of the property within this state, and properly so. This principle has been discussed and well expressed by Mr. Justice Holmes in
 
 Wallace
 
 v.
 
 Hines, supra,
 
 at page 69 (40 Sup. Ct., 436):
 

 “The only reason for allowing a state to look beyond its borders when it taxes the property of foreign corporations is that it may get the true value of things within it. When they are part of an organic system of wide extent, that gives them a value above what they otherwise would possess. The purpose is not to expose the heel of the system to a mortal dart — not, in other words, to open to taxation what is not within the state. Therefore no property of such an interstate road situated elsewhere can be taken into account unless it can be seen in some plain and fairly intelligible way that it adds to the value of the road and the rights exercised in the state.”
 

 The same principles have been declared in earlier cases and followed in later cases decided by the
 
 *79
 
 Supreme Court of the United States, notably the ease of
 
 St. Louis & East St. L. Elec. Ry. Co.
 
 v.
 
 State ex rel. Hagerman,
 
 256 U. S., 314, 41 Sup. Ct., 488, 65 L. Ed., 946. In the latter ease the principle was discussed by Mr. Justice Clarke at length and in which he cited the cases of
 
 Atlantic & Pacific Teleg. Col.
 
 v.
 
 Philadelphia,
 
 190 U. S., 160, 23 Sup. Ct., 817, 47 L. Ed., 995, and
 
 St. Louis Southwestern Ry. Co.
 
 v.
 
 Arkansas,
 
 235 U. S., 350, 35 Sup. Ct., 99, 59 L. Ed., 265.
 

 The discussions in the foregoing cases are only an enlargement upon the subject of situs, as hereinbefore discussed.
 

 Without further citation of authority, we have reached the conclusion that the good will, franchises and other intangibles having a situs coincident with the constituent parts of the property located in the several states, and which add value to the entire property, are properly considered as affecting the value of the entire property.
 

 Upon a superficial examination of Section 5424 it would seem that the word “proportion” has little if any practical meaning. Let us assume that the property of all kinds in Ohio is of the value of $1,000,000 and that all the property of all kinds in the other states is of the value of $19,000,000. Following literally the language of Section 5424, it would at first thought seem to follow that the proportion of the property in Ohio would necessarily be one-twentieth, and therefore its value is $1,000,000 for taxation, which would have been the correct valuation under general laws. A more careful analysis of that section leads to a definite legislative intent and gives to the section
 
 *80
 
 a real and practical value. After all of the property in all of the states, which is of such nature as to be the subject-matter ■ of separate valuation has been appraised, the commission may then consider all other elements, including good will, franchises and other factors which enter into the value of the corporate property as a whole, and if, for example, the total value of the entire property is augmented thereby to the extent of 50 per cent, of the valuations as shown by the separate units considered separately, then the entire property having been augmented in value by 50 per cent, it is proper that the unit located in Ohio should also be augmented by the amount of 50 per cent, of its separate valuation.
 

 This court will not attempt to define all of the elements which may properly enter into the valuation of the property as a whole, believing that the experience of the tax commission and its facilities afford it the ability to make rules, in which we can render no valuable aid. It should, however, be stated that the apparent action of the commission in this case in fixing the proportion of the valuation for Ohio taxation upon the income in Ohio is erroneous. That theory has been condemned in
 
 Nevada-California Power Co.
 
 v.
 
 Hamilton, Treas.
 
 (D. C.), 235 Fed., 317, in a discussion found on page 326 of the opinion:
 

 “It is futile to urge that 85 per cent, of the company’s income is earned in Nevada. There is no evidence to that effect. Eighty-five per cent, of the income may be collected in Nevada, because Nevada affords the company its principal market. The commission utterly ignored the fact that the
 
 *81
 
 company earns a part of its income by the nse of its water rights, reservoirs, ditches, pipe lines, and power plant. The company is engaged in two lines of business: It is a manufacturer, and as such its entire business is in California; there it generates all its power. It is also engaged in transmitting to, and selling electric power in, southern Nevada. If Nevada can capitalize all the net earnings of the company, both as a manufacturer in California and as a distributor in Nevada, and appropriate 85 per cent, of the capitalized value for assessment and taxation, why may not the tax commission of California with equal justice capitalize the gross earnings of the company in both states, and take the entire value thus ascertained, because all the property used in manufacturing the company’s product is situated in that state? Furthermore, if 85 per cent, of the company’s income is earned in Nevada, it necessarily follows that the earning.power of each dollar invested by the company in Nevada transmission lines is more than elevenfold greater than the earning power of each dollar invested in the California water 'rights and power plant.”
 

 It is apparent that the commission has followed a course which violates the foregoing pronouncements and that its valuation was erroneous and that the court of common pleas and the Court of Appeals judgments should be affirmed.
 

 The report of the utility in the instant case shows only a small production of gas in Ohio, being about one-sixth of 1 per cent, of the entire production, and all the balance of production is in the other states. It further shows that a large
 
 *82
 
 quantity of the gas produced in the other states is sold in the state of Ohio, which is apparently about £0 per cent, of the entire production.
 

 Following the foregoing principles, it must not be assumed that because 20 per cent, of the gas is sold that 20 per cent, of the profits are earned in Ohio.
 

 It follows that this record does not show that the property located in Ohio has earned a larger rate of income than the property located in the other states.
 

 It has already been shown that it is proper to consider profits as affecting the value of the entire property. But it must not be assumed that a valuation of a public utility can be determined by sole reference to profits, or that a correct result can be reached by capitalizing the profits. Profits are merely one element proper to be considered with all other proper elements in arriving at the value of the entire property. It is manifest that if profits were to be taken as the sole criterion, it would logically result that, if no profits were earned, there would be no property to be taxed.
 

 The only other point left for consideration is the third assignment of error, to-wit, that the court of common pleas did not reach its conclusions by the proper standard of evidence.
 

 It is true that by virtue of Section 5613-2 it could not reverse the order of the commission, unless a showing was made by clear and convincing evidence. It has been decided by this court in
 
 Ford
 
 v.
 
 Osborne,
 
 45 Ohio St., 1, 12 N. E., 526:
 

 “Where the affirmative of the issue in a civil action requires clear and convincing proof to
 
 *83
 
 sustain it, and it is claimed that the rule has been disregarded, this court may, where it is all set forth in a bill of exceptions, review the evidence for the purpose of determining if the rule has been regarded.”
 

 This principle was later approved in
 
 Olinger
 
 v.
 
 McGuffey,
 
 55 Ohio St., 661, 48 N. E., 1115.
 

 We have examined this record, and we are not able to say that the court of common pleas did not apply the proper rule. The judgments of the court of common pleas and of the Court of Appeals will therefore be affirmed.
 

 Judgment affirmed.
 

 Robinson, Jones, Matthias, Day, and Allen, JJ., concur.