THE PENNSYLVANIA RD. CO., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

(No. 68-276—Decided December 31, 1968.)

*Messrs. Squire, Sanders & Dempsey, Mr. John Lansdale, Mr. William H. Lutz, Jr., Mr. David A. Nelson* and *Mr. Morris E. Knopf*, for appellant.

*Mr. William B. Saxbe*, attorney general, *Mr. Edgar L. Lindley* and *Mr. W. Robinson Watters*, for appellee.

TAFT, C. J. This is an appeal from a decision of the Board of Tax Appeals determining at $153,455,000, the assessed value for Ohio taxation of the Pennsylvania Railroad Company for 1966 (*i. e.*, its assessed value as of December 31, 1965).

In substance and effect, the method used by the Board of Tax Appeals, in reaching that conclusion for the tax year 1966, was to start with the amount of the tax valuation of the railroad for the tax year 1965, with certain adjustments thereto made by the Board of Tax Appeals and which are hereinafter explained. From this starting figure the cost of materials and supplies, included therein, was deducted (apparently upon the assumption they would be used up within the year). The resulting figure was then reduced by 3% (referred to as "inferiority factor"). To the resulting balance, there was then added 80% of the book cost of additions and betterments made during the year 1965. Then there was deducted from the resulting total, 80% of the book cost of retirements (*i. e.*, property retired from service) during 1965. The remaining amount

of $153,455,000 represents the valuation complained of in the instant case.

As mentioned, the starting figure used by the Board of Tax Appeals in determining the 1966 tax valuation for the Pennsylvania Railroad was the amount of its 1965 tax valuation, with certain adjustments. In order to understand what those adjustments were, it is necessary to consider the method used by the Tax Commissioner in determining tax valuations for the Pennsylvania Railroad for years prior to the tax year 1966.

During those years, the Tax Commissioner had used substantially the same method used by the Board of Tax Appeals as described above, with the following variations:

1. His starting figure had been the previous year's tax valuation.

2. Two instead of three per cent had been used for the ''inferiority factor.''

3. Fifty instead of eighty per cent of the book cost of retirements for the previous year had been deducted.

4. The figure reached by following this method had been adjusted by negotiation between the railroad and the Tax Commissioner in each year.

These adjustments over the years since 1948 have resulted in a total of decreases of over $46,000,000 from the assessed valuation that would have resulted if the commissioner followed the method outlined above without such adjustments. The record does not disclose what, if any, relationship these adjustments had to the value of the property of the railroad.

To reach the starting figure that it used, the Board of Tax Appeals adjusted the amount of the tax valuation of the railroad for 1965 by determining what the amount of that tax valuation would have been if, for each tax year after 1954, the Tax Commissioner had used an ''inferiority factor'' of 3% instead of 2%, and had deducted 80% instead of 50% of the book cost of retirements.

In a period of rising costs, the method used by the Board of Tax Appeals in determining the assessed value

for Ohio taxation of the Pennsylvania Railroad, would probably be favorable to any utility that is a monopoly and enabled by rates, fixed by the Public Utilities Commission, to earn a fair return on the reproduction cost new less depreciation of the property used by it in rendering a public utility service.

The value of the property of such a utility, after a few years, would usually exceed its cost by a substantial amount. See *General Telephone Co.* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 575, 191 N. E. 2d 341. Also, its earning power would usually justify a much higher valuation for such utility than would the method used by the Board of Tax Appeals. See *Adams Express Co.* v. *Ohio State Auditor* (1897), 166 U. S. 185, 41 L. Ed. 965, 17 S. Ct. 604.

However, a railroad today is usually not that kind of a utility. Because of competitive forms of transportation, a railroad usually no longer enjoys a monopoly to any substantial extent, and no provision is made by law for its earning a fair rate of return on the reconstruction cost new less depreciation value of any of its property. See *Toledo Edison Co.* v. *Pub. Util. Comm.* (1954), 161 Ohio St. 221, 118 N. E. 2d 531; *Ohio Coal Assn.* v. *Pub. Util. Comm.* (1955), 164 Ohio St. 108, 128 N. E. 2d 39.

The method used by the Board of Tax Appeals is apparently based upon the premise that an 80% of cost, that is substantially reduced over the years by a 3% annual deduction for "inferiority factor" and an 80% of cost reduction for retirements, can be equated with true value. Except by considering its cost, this method does not purport to even consider the value of any of the railroad's property.

Probably, with respect to a new utility, the method used by the Board of Tax Appeals in valuing the Pennsylvania Railroad for taxation in 1966 could be approved as reasonable. *South Central Rural Electric Cooperative* v. *Evatt* (1941), 139 Ohio St. 80, 38 N. E. 2d 317. In other words, if a utility buys property during the year 1965 at a certain price, it would usually be reasonable to infer

that the value of such property at the end of that year would be close to its cost.

However, the value of property may fluctuate up or down substantially over a period of years. In our opinion, the longer the method of tax valuation used by the Board of Tax Appeals in the instant case is used, the less chance there is that it will produce an amount representing true value.

The method, used by the Board of Tax Appeals in valuing the property of the Pennsylvania Railroad for taxation, does have features (such as taking in property at 80% of cost, and over-all annual depreciation of 3% and retiring property at 80% of cost) which will necessarily result over a period of years in tax valuations substantially below the book value of the railroad's property. However, as stated in paragraph nine of the syllabus in *Opdyke* v. *Security Savings & Loan Co.* (1952), 157 Ohio St. 121, 105 N. E. 2d 9, "The book value of an asset at any given time may be more or less than its value * * *."

Nothing in the statutes providing for the taxation here involved (Chapter 5727 Revised Code) suggests a method of valuation such as that used by the Board of Tax Appeals. Some tax statutes either require or authorize use of book value as the basis for the tax imposed. *National Tube Co.* v. *Peck* (1953), 159 Ohio St. 98, 111 N. E. 2d 11. *R. H. Macy Co.* v. *Schneider* (1964), 176 Ohio St. 94, 197 N. E. 2d 807. The statutes involved in the instant case do not.

On the contrary, Section 5727.10, Revised Code, provides that "the Tax Commissioner shall ascertain and assess at its true value in money all the property in this state of each public utility," and that "in determining the value of the property of each such public utility to be assessed and taxed, the commissioner shall be guided by the value of the property as determined by the information contained in the sworn statements made by the public utility to the commissioner, and such other evidence and rules as will enable him to arrive at the true value in money

of the entire property of such public utility within this state, in the proportion which the value of such property bears to the value of the entire property of such public utility.''

With regard to the statutes involved in the instant case, this court stated in paragraph four of the syllabus of *Floyd* v. *Mfgrs. Light & Heat Co.* (1924), 111 Ohio St. 57, 144 N. E. 703:

"In determining the true value in money of property within the state of Ohio belonging to a public utility engaged in interstate commerce, the Tax Commission may take into consideration everything which would render the property desirable as an investment, including the good will of the concern, the skill, experience, and energy with which its business is conducted, the franchises owned and utilized in Ohio and elsewhere, and the profits earned by the entire property. Thereupon the entire value of the utility must be ascertained, not in parts, but as a whole, augmented by the value of the aforesaid elements * * *.''

The opinion, at page 71, quotes with approval the following statement from the opinion in *State, ex rel.,* v. *Jones,* 51 Ohio St. 492, 511, 37 N. E. 945:

"* * * If the market value—perhaps the closest approximation to the true value in money—of the corporate property as a whole, were inquired into, the market value of the capital stock would become a controlling factor in fixing the value of the property.''

To the same effect, see *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185, 218 *et seq.,* 41 L. Ed. 965, 17 S. Ct. 604, where a rehearing on a decision of affirmance was denied.

We recognize that, in the case of the Pennsylvania Railroad, use of this method of valuation, *i. e.,* market value of debt and ownership interests, may present practical difficulties. Although the market value of its securities can probably be readily determined, its railroad properties represent only a portion of its properties. Hence, use of this method would involve the problem of deter-

mining the value of its properties other than railroad properties.

In the opinion in the *Floyd case* (111 Ohio St. 57), at page 82, it is stated further:

"It has already been shown that it is proper to consider profits as affecting the value of the entire property. But it must not be assumed that a valuation of a public utility can be determined by sole reference to profits, or that a correct result can be reached by capitalizing the profits. Profits are merely one element proper to be considered with all proper elements in arriving at the value of the entire property. It is manifest that if profits were to be taken as the sole criterion, it would logically result that, if no profits were earned, there would be no property to be taxed."

We conclude that a decision, determining the valuation for Ohio tax purposes of a railroad, is unlawful where the method used to deteremine that valuation does not purport to consider the value of any of the railroad's property except by reference to its cost when acquired at various times over a long period of years, and where such decision gives no consideration to the earnings of the railroad, and where such decision gives no consideration to the market value of the debt of and ownership interests in the railroad.

There is another reason why the decision in the instant case is unlawful.

A substantial part of the property of the Pennsylvania Railroad is real property.

Section 2, Article XII of the Ohio Constitution, provides in part:

"Land and improvements thereon shall be taxed by uniform rule according to value."

Section 5715.01, Revised Code, provides so far as pertinent:

"The taxable value [of all real property] shall not exceed fifty per cent of true value in money."

It is apparent that, if the Tax Commissioner did

"ascertain and assess at its true value in money all the property in this state of" a railroad in accordance with Section 5727.10, Revised Code, and a tax were levied on the amount so assessed, then real property of a railroad would be taxed at 100% of its true value in money while real property of others would be taxed [pursuant to Section 5715.01, Revised Code] at a much lower percentage (not over 50%) of such value. This would be contrary to Section 2 of Article XII of the Ohio Constitution.

This would also be contrary to Section 5727.11, Revised Code, which reads:

"The Tax Commissioner shall deduct from the total value of the property of each public utility * * * in this state, as assessed by him, the value of the real property owned by such public utility as assessed for taxation, and shall equitably equalize the relative values thereof. * * *"

Thus, the decision of the Board of Tax Appeals in the instant case is unlawful because it does not provide for valuing the real property of the Pennsylvania Railroad at the same percentage of true value at which the real property of others is valued for Ohio property taxation.

This conclusion necessarily follows from our decisions in *State, ex rel. Park Investment Co.,* v. *Board of Tax Appeals* (1964), 175 Ohio St. 410, 195 N. E. 2d 908; *Frederick Bldg. Co.* v. *Bd. of Revision* (1968), 13 Ohio St. 2d 59, 233 N. E. 2d 594; *Goldberg* v. *Bd. of Revision* (1966), 7 Ohio St. 2d 139, 218 N. E. 2d 723; *Koblenz* v. *Bd. of Revision* (1966), 5 Ohio St. 2d 214, 215 N. E. 2d 384.

For the foregoing reasons, the decision of the Board of Tax Appeals is reversed and the cause is remanded for further proceedings.

*Decision reversed.*

ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.

SCHNEIDER, J., concurs in paragraph two of the syllabus and in the judgment.