HATCHADORIAN, AUDITOR, APPELLANT AND APPELLEE, *v.* LINDLEY, TAX COMMR., ET AL., APPELLEES AND APPELLANTS.

[Cite as Hatchadorian *v.* Lindley (1986), 21 Ohio St. 3d 66.]

(Nos. 85-237, 85-370, 85-371 and 85-373—Decided January 15, 1986.)

*Kelley, McCann & Livingstone, Walter C. Kelley* and *Fred J. Livingstone,* for the Cuyahoga County Auditor.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for the Tax Commissioner.

*Jones, Day, Reavis & Pogue, Raymond J. Durn* and *John C. Duffy, Jr.,* for OT&T and AT&T.

WRIGHT, J.

I

We first consider whether the commissioner improperly excluded certain items of the taxpayer's personal property in the valuation certificates for the 1981 and 1982 tax return years. The BTA rejected the auditor's challenge to the commissioner's exclusion of the "construction work in progress" account and that portion of the taxpayer's "materials and supplies" account which includes engineering and contractual services. The record supports, and we agree with, the factual and legal findings of both the commissioner and the BTA that this property was not "used in business" within the meaning of R.C. 5701.08 and was therefore properly excluded.[3]

We reject the auditor's next argument that the commissioner should have included as taxable the "anticipated salvage" account. This account

---

[3] R.C. 5701.08 provides, in pertinent part:

"* * *

"(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products, or merchandise. Machinery and equipment classifiable upon completion as personal property while under construction or installation to become part of a new or existing plant or other facility is not considered to be 'used' by the owner of such plant or other facility within the meaning of 'used in business' until such machinery and equipment is installed and in operation or capable of operation in the business for which acquired. * * *"

The auditor suggests that a conflict exists between R.C. 5701.08 and the statutes in R.C. Chapter 5727. R.C. 5727.06 controls the taxation of property owned by public utilities. We find nothing in R.C. Chapter 5727 that renders R.C. 5701.08 inapplicable to public utilities. R.C. 5701.08 merely defines a term contained in R.C. Chapter 5727.

includes the purported gross salvage value of property that had been retired in place pending removal for junk value. The record supports the commissioner's finding that this property is not capable of use in the taxpayer's business and that the value of this property is exceeded by the cost of removal or disposal. The BTA characterized this account as "idle" equipment, citing *Syro Steel Co.* v. *Kosydar* (1973), 34 Ohio St. 2d 9 [63 O.O.2d 6]. The property characterized as "idle" equipment in *Syro Steel* was regularly serviced so that it would be ready for use. The record in the instant case indicates that the taxpayer did not intend to use the "anticipated salvage" property at a later date and that the property was not "kept and maintained" for future operation. See R.C. 5701.08. Property is not "used in business" within the meaning of R.C. 5701.08 when it is no longer held for any business purpose other than disposal. *Allied Metals Co.* v. *Lindley* (Sept. 27, 1976), BTA No. E-94.

The auditor also contended that the commissioner improperly excluded from taxation certain underground coaxial cables. The BTA agreed with this contention even though tubes in these particular cables had never been placed in service and were at that time incapable of use in any manner. The record indicates that, although the cables had been placed in the ground, the tubes within the cables had not all been installed or integrated into the taxpayer's telecommunications system. The BTA recognized that "* * * only a portion of such lines within such cables are actually connected and are being used to provide customer service, with the remaining unused portion being only ready for connection for use * * *." The unused tubes were not "installed and in operation or capable of operation in the business for which acquired." R.C. 5701.08(A). The commissioner correctly concluded that only those tubes actually capable of use should be taxable as being "used in business." See *Pfizer* v. *Porterfield* (1971), 25 Ohio St. 2d 5 [54 O.O.2d 151].

The commissioner is given "the exclusive power [by statute] to value and assess * * * property." *Toledo Edison Co.* v. *Galvin* (1974), 38 Ohio St. 2d 210 [67 O.O.2d 230]. A substantial amount of evidence in the record supports the commissioner's findings. The Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful. We uphold the commissioner's findings here.

## II

We next consider whether the commissioner accurately determined the true value of the taxpayer's personal property for the 1981 and 1982 tax return years. The commissioner used a "cost less depreciation" valuation method that was developed after a departmental study. The commissioner took the original cost figures for all of the taxpayer's property within Ohio and then subtracted the value of those items determined to be deductions and exclusions from taxable property. To this figure, the com-

missioner applied a fifty percent depreciation and obsolescence allowance. The goal of this method is to value property based on the actual experience of the industry. The formula has been applied uniformly to all similarly situated utilities since the late 1960s.

The auditor asserted that the commissioner should have valued the property by using the depreciated book value of the taxpayer's personal property as determined by the depreciation methods and rates set forth by the Federal Communications Commission ("FCC"). Although the BTA did not adopt the depreciated book value method, it did reject the cost less depreciation method as "unreasonable and unlawful." The BTA based its holding on *Pennsylvania RR. Co.* v. *Porterfield* (1968), 16 Ohio St. 2d 136 [45 O.O.2d 474].

All parties agree that *Pennsylvania RR. Co.* is inapposite. The *Pennsylvania RR. Co.* decision was premised on R.C. 5727.12, a valuation provision applicable only to railroads.[4] The BTA erred as a matter of law in basing its ruling on *Pennsylvania RR. Co.*

R.C. Chapter 5727 directs the commissioner to determine the true value of public utility property. R.C. 5727.19 read in pertinent part during the return years at issue:

"On the first Monday in July, annually, the tax commissioner shall ascertain and assess the value of the property of the express, telegraph, and telephone companies in this state.

"In determining the value of the property of such companies in this state to be taxed and assessed as provided in this section, the commissioner shall be *guided* by the value of the property as determined by the value of the entire capital stock of the companies, and such other evidence and rules as will enable the commissioner to arrive at the true value in money of the entire property of such companies within this state, in the proportion which such property bears to the entire property of the companies, as determined by the value of the capital stock thereof and such other evidence and rules.

"* * *

"Between the date fixed by this section for the assessment of the property of any express, telegraph, or telephone company for taxation by the tax commissioner and the date fixed by section 5727.23 of the Revised Code for the certification by the commissioner of the apportioned valua-

---

[4] The *Pennsylvania RR. Co.* case, *supra,* upon which the BTA based much of its decision, may be properly limited—by its own language—to the assessment of railroad property. In paragraph one of the syllabus of that case, this court held:

"A determination of the valuation of a *railroad* for Ohio property tax purposes is unlawful where the method used to determine that valuation does not purport to consider the value of any of the *railroad's* property except by reference to its cost when acquired at various times over a long period of years, and where such decision gives no consideration to the market value of the debt of and ownership interests in the *railroad,* and where such decision gives no consideration to the earnings of the *railroad.*" (Emphasis added.)

tion to the several counties, the commissioner may, on the application of any interested person or company or on its own motion, correct the assessment or valuation of the property of any such company in such manner as will, *in his judgment, make the valuation thereof just and equal.*" (Emphasis added.)

This statute directs the commissioner to consider certain factors but it does not mandate the use of any particular valuation method.

The commissioner is given "the exclusive power to value and assess public utility property." *Toledo Edison Co.* v. *Galvin, supra,* at 212. The propriety of a determination of true value is an issue of fact, not an issue of law. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13 [73 O.O.2d 83]; *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52 [44 O.O.2d 30]; *American Steel & Wire Co. of New Jersey* v. *Bd. of Revision* (1942), 139 Ohio St. 388, 391 [22 O.O. 445]. In reviewing the determination of true value made by the commissioner, the BTA should have decided whether that factual determination was accurate.[5]

On appeal to the BTA, the auditor had the burden to prove that the commissioner's valuation did not accurately reflect true value. No evidence was offered to establish a more accurate determination of true value or to demonstrate the manner and extent of the claimed error. Cf. *PPG Industries* v. *Kosydar* (1981), 65 Ohio St. 2d 80 [19 O.O.3d 268]. When no competent and probative evidence is developed before the BTA to show that the commissioner's determination of value is *factually* incorrect, it is error for the BTA to reverse that determination.[6]

In conclusion, we uphold the commissioner's findings and reject the auditor's contentions. We affirm that portion of the BTA decision that affirmed the exclusion of the taxpayer's "construction work in progress" account and the engineering and contractual services portion of the

---

[5] The auditor notes that none of the "parties" to the appeals before the BTA raised the issue of whether the commissioner's *method* of valuing taxpayer's property was "unreasonable and unlawful" under the authority of *Pennsylvania RR. Co.* v. *Porterfield* (1968), 16 Ohio St. 2d 136 [45 O.O.2d 474]. This statement is correct when placed in the proper context. The auditor was the *only* "party" before the BTA who challenged the commissioner's method of valuation. The auditor is attempting, however, to use this statement to convince this court that the "parties" agree that the taxpayer's property should be valued *only* by reference to its cost.

Both the taxpayer and the commissioner argue that it was unreasonable and unlawful for the BTA to reverse the commissioner's *factual* determination of true value merely because that factual determination was made using a cost approach to value. The taxpayer has not taken the position that property of a telephone company (or any public utility) can or should be valued *only* by using a cost approach.

[6] The taxpayer alleges that requiring the commissioner to assess the taxpayer's property by a valuation method different from that used for valuing the property of all similarly situated taxpayers would violate constitutional requirements of equal protection. Because we reverse the BTA holding on an alternate basis, we need not address the equal protection argument.

"materials and supplies" account. We reverse that portion of the BTA holding that overruled the exclusions of the "anticipated salvage" account and the underground coaxial cables. We also reverse that portion of the BTA holding that rejected the commissioner's valuation method.

*Decision affirmed in part
and reversed in part.*

SWEENEY, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

CELEBREZZE, C.J., and LOCHER, J., dissent in part.

LOCHER, J., dissenting in part. Finding the underground cable taxable and the fifty percent depreciation factor improper, I must dissent in part. I agree with the remainder of the opinion.

R.C. 5701.08(A) states, in pertinent part:

"Personal property is 'used' within the meaning of 'used in business' * * * when acquired or held as means or instruments for carrying on the business, * * * *whether actually in operation or not* * * *." (Emphasis added.)

The unconnected cables are "used in business" since they serve as secondary cables in case of primary cable failure or insufficiency. These are not "idle" materials that have no business purpose. The taxpayers herein included these cables in the *rate* base, and should not be permitted to then exclude the value from the tax base.

In the same manner, the taxpayers utilized a certain depreciation percentage for specific assets with regard to the rate base, and should not be allowed to ignore this percentage in favor of an across-the-board factor of fifty percent for tax purposes. The claim that this factor has been used by the Tax Commissioner for many years has no merit; administrative ease is no justification for valuation which is not reflective of the "true value" as mandated by former R.C. 5727.19. The method with which I find fault is implemented without respect to the age of any specific property of the taxpayers.

Further, the BTA is not required to find a more accurate valuation method. Pursuant to R.C. 5717.03, the BTA may simply remand the cause to the commissioner for purposes of revaluation, without prescribing a particular method. It is then incumbent upon the commissioner to determine the "true value" of the property.

Accordingly, I would affirm the entire decision of the BTA.

CELEBREZZE, C.J., concurs in the foregoing opinion.