CC LEASING CORPORATION, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as CC Leasing Corp. *v.* Limbach (1986), 23 Ohio St. 3d 204.]

(No. 85-356—Decided April 30, 1986.)

*Fuller & Henry, James M. Morton, Jr., Fred J. Lange, Jr.,* and *Glenn L. Rambo,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellee.

*Per Curiam.* The two issues presented for review are whether the fuel assemblies must be listed under R.C. 5711.22(C) or (D), and whether the commissioner's valuation was reasonable. For the reasons set forth below, we must reverse the decision of the Board of Tax Appeals.

## I

R.C. 5711.22, as it applied to tax years 1978-1982, provided:

"(C) Boilers, machinery, equipment, and personal property used for the generation or distribution of electricity other than for the use of the person generating or distributing such electricity shall be listed and assessed as its true value in money on the day that it is required to be listed.

"(D) Unless otherwise provided by law, all other personal property used in business that has not been legally regarded as an improvement on land and considered in arriving at the value of real property assessed for taxation shall be listed and assessed on the day that it is required to be listed as follows:

"(1) In the return filed for the year 1978, at forty-six per cent of its true value in money;

"(2) In the return filed for the year 1979, at forty-four per cent of its true value in money;

"(3) In the return filed for the year 1980, at forty-two per cent of its true value in money;

"(4) In the return filed for the year 1981, at forty per cent of its true value in money;

"(5) In the return filed for the year 1982, at thirty-eight per cent of its true value in money. * * *"

Appellant contends that it uses the personal property in question to lease to others for a profit, not to generate electricity for the use of others, and, therefore, must list such property under R.C. 5711.22(D), requiring taxation on reduced percentages of true value. Its argument is that it is only in the hands of its lessees that the property would fall into R.C. 5711.22(C) requiring taxation at full true value; but, in its hands, the personal property is merely used in its equipment leasing business. This contention ignores the prior Board of Tax Appeals' holdings that it is the

"use" to which leased equipment is put which determines the applicable listing percentage, irrespective of the status of the owner or person in whose name the equipment is listed. *First National Bank of Akron, Trustee* v. *Bowers* (Nov. 13, 1959), B.T.A. No. 40577, 2 Ohio Tax Cases 12,381, Par. 201-018, and *Equilease Corp.* v. *Donahue* (Sept. 16, 1966), B.T.A. No. 59629, 3 Ohio Tax Cases 11,286, Par. 200-748. This court has never overruled that position, although we had an opportunity to do so in *Equilease Corp.* v. *Donahue* (1967), 10 Ohio St. 2d 81, 83 [39 O.O.2d 88]. There we held that the taxpayer's business of leasing equipment to others is using property "in its own business." That case merely stands for the proposition that a lessor of leased property is the proper entity to be taxed on such property. We have not yet decided the question of which entity's use of the property is determinative for listing purposes.

The Board of Tax Appeals concluded that it is the physical use of the property by the lessee which determines how such property shall be listed and assessed in terms of R.C. 5711.22. Although we are aware of the construction doctrine that requires any ambiguity in the tax laws to be liberally construed in favor of the taxpayer, *Davis* v. *Willoughby* (1962), 173 Ohio St. 338 [19 O.O.2d 270], paragraph one of the syllabus; *Gulf Oil Corp.* v. *Kosydar* (1975), 44 Ohio St. 2d 208 [73 O.O.2d 507], paragraph one of the syllabus, we find that the board's conclusion is a correct interpretation of R.C. 5711.22 and its intent. To find otherwise would allow utility companies to lease all the equipment necessary to generate the community's electricity at a price which would not reflect the tax burden determined to be appropriate by the General Assembly. Such a scheme would circumscribe the unambiguous meaning of R.C. 5711.22(C) to tax such equipment and/or personal property at full value.

We hold that although the taxpayer used the assemblies in its leasing business to earn lease payments, the property was ultimately "used for the generation or distribution of electricity other than for the use of the person generating or distributing such electricity" and, therefore, must be listed at full value under the language contained in then-existing R.C. 5711.22(C).

## II

The second issue presented is whether the Board of Tax Appeals' determination of the true value of the assemblies was unreasonable or unlawful—the test set forth for valuation questions in the syllabus in *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52 [44 O.O.2d 30]. Although "depreciated book value" is mandated as establishing true value by R.C. 5711.18, that section goes on to authorize the assessor to find "that such depreciated book value is greater or less than the then true value of such property in money." In the instant case, the commissioner so found and computed the true value of the assemblies according to information of the utilities' use of fuel for each month after December 1976. Since the tax-

payer has the burden of proving that the commissioner's formula did not reflect the true value of the property, *Alcoa* v. *Kosydar* (1978), 54 Ohio St. 2d 477 [8 O.O.3d 459], we turn now to examine the evidence put forth on the record.

The evidence shows that appellant's original cost for the fuel assemblies was $36,417,786.60. The commissioner and Board of Tax Appeals apparently determined that the assemblies would not have a zero value in three and one-half years, and computed true value for the 1978-1982 tax years by amortizing ninety-six percent of the cost of the assemblies on the basis of the utilities' consumption of the fuel capacities of the assemblies. They reasoned that any reduction in value was a result of the consumption of the energy and that there was essentially little or no depreciation without consumption. The parties have stipulated as to the fuel consumption; *approximate* amounts are as follows: four percent before tax year 1978; two percent in 1978; eighteen percent in 1979; twenty-one percent in 1980; eleven percent in 1981; and twenty-one percent in 1982. Thus, about twenty-three percent of the fuel remained at the time of sale which, under the commissioner's formula, meant the assemblies had a true value of over $8,324,000 (about twenty-three percent of the original cost).

We do not question the commensurability of the tax authorities' assignments of true value with the percentages of fuel actually consumed. What we must note is that, under the appellant's lease agreement with the utilities, appellant was entitled to certain payments whether or not the fuel was consumed. To hold that lease payments made during even the months of non-productivity of the assemblies are not significant to true value would be to unlawfully ignore the taxpayer-lessor's benefit under the lease. *Commonwealth Plan, Inc.* v. *Kosydar* (1976), 47 Ohio St. 2d 39, 41 [1 O.O.3d 24]. Appellant was entitled to lease payments and, eventually, the option purchase price if exercised by lessee. Appellant was not entitled to sell the assemblies on the list dates for the unrecovered cost of the fuel remaining in the assemblies. Where an article is not put on the market for sale but is instead leased by the owner to another for valuable consideration, it should be taxed to such owner at its true value in money—"the value that attaches to it *in his hands*." (Emphasis added.) *State, ex rel.,* v. *Halliday* (1899), 61 Ohio St. 352, paragraph two of the syllabus. We again hold that "[i]n ascertaining the true value in money of such property in the hands of its owner, every fact or circumstance, brought to the attention of the person or officer who is charged with the duty of fixing that value, and which in its nature bears on the question, should be considered by him. One of those circumstances is the earnings or rental of such article." *Id.* at paragraph three of the syllabus. Other factors would include, but not be limited to, the character of the market for such articles, length of time the article would be productive, original cost, cost of replacement, and income-producing capacity. *Id.* at 379.

In making the subject assessments pertaining to the nuclear fuel,

which the record indicates suffered minimal depreciation in the absence of consumption, the commissioner looked outside the lease at what the property would have sold for between a willing buyer and a willing seller on a willing market. Although this court has long held that true value in money of any property is the amount for which it *would* sell by a willing seller to a willing buyer in an arm's-length transaction, *Tele-Media Co.* v. *Lindley* (1982), 70 Ohio St. 2d 284 [24 O.O.3d 367], syllabus; *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129 [4 O.O.3d 309], paragraph one of the syllabus, or the amount "for which it *may* be exchanged," *State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412 [25 O.O.2d 432] (emphasis added), a review of other factors is appropriate where such rules do not accurately reflect the situation at hand. See *Columbus Bd. of Edn.* v. *Fountain Square Assoc. Ltd.* (1984), 9 Ohio St. 3d 218, and *Consolidated Aluminum Corp.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 410, 414-415 [20 O.O.3d 357]. At the various points when the commissioner valued the unused nuclear fuel, she did so without recognizing that the taxpayer could not freely sell the property on the open market because of its contractual obligations to its lessees. Had there been a default by the lessees or lessor allowing a sale of the unused fuel, along with all attendant damage costs and market conditions at that time, at a price commensurate with the assessed valuations, the commissioner's position would possess merit. As the case now stands, however, the active life of the nuclear fuel is only one factor to be considered along with the "earnings or rental of such article." As far as the weight of the purchase price of $1,229,133 is concerned, we feel that the presumption of the purchase price being the best evidence set forth in *Tele-Media Co., supra,* may be rebutted by the fact that appellant obviously misstated the value for the nuclear fuel for the tax years 1981 and 1982 by reporting no value at all. Therefore, the tax authorities have authority to determine the true value of the property at that time, taking into consideration the contractual agreement to sell at the greater of unamortized cost or market value.

In conclusion, it is clear from the non-depreciable quality of nuclear fuel that the taxpayer undervalued its property for the tax years in question. Nevertheless, in issuing the assessments, the commissioner should not remain oblivious to the terms and conditions of the lease, and its benefits to lessor. By showing the commissioner's failure to take into consideration its contractual limitations, appellant has shouldered its burden of proving that the tax authorities' determination of true value was unreasonable.

Accordingly, the decision of the board is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Decision reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.