GANNETT SATELLITE INFORMATION NETWORK, INC., APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as Gannett Satellite Information Network, Inc. *v.* Limbach (1989), 45 Ohio St. 3d 148.]

(No. 88-248—Submitted May 2, 1989—Decided August 23, 1989.)

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellant.

HOLMES, J. The facts in this case are not in dispute, and the dispositive issues are (I) whether the subject presses were, as a matter of law, "used in business" and to be listed for taxation as of December 31, 1979 by this taxpayer within the meaning of R.C. 5709.01 and 5701.08(A), and (II) whether R.C. 5711.18 requires that taxpayer's taxable property be assessed for taxation based on its computed true value or based on its depreciated book value, an amount which exceeds its true value.

## I

R.C. 5701.08 reads in pertinent part:

"(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products or merchandise. Machinery and equipment classifiable upon completion as personal property while under construction or installation to become part of a new or existing plant or other facility is not considered to be 'used' by the owner of such plant or other facility within the meaning of 'used in business' until such machinery and equipment is installed and in operation or capable of operation in the business for which acquired. * * *"

In *Pfizer* v. *Porterfield* (1971), 25 Ohio St. 2d 5, 54 O.O. 2d 151, 266 N.E. 2d 558, this court, in interpreting R.C. 5701.08(A), designated four general classes of personal property considered to be used in business: (1) when employed or utilized in connection with ordinary or special operations, (2) when acquired or held as means or instruments for carrying on the business, (3) when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, and (4) when stored or kept on hand as material, parts, products, or merchandise. *Id.* at 9, 54 O.O. 2d at 153, 266 N.E. 2d at 560.

Moreover, we specifically stated in *Pfizer* that by the express wording of the statute, machinery and equipment while under construction or installation to become part of a new or existing plant, which machinery and equipment is not in operation or capable of operation, is not property "used in business." *Id.*

The Tax Commissioner argues that the "construction in progress" exception in R.C. 5701.08 applies only to personal property that is "kept and maintained as a part of a plant capable of operation, whether actually in operation or not," and to personal property that is "acquired or held as a means for carrying on the business," neither of which exception is applicable here.

We reject that proposition, just as we did in *Pfizer. Id.* at 9-10, 54 O.O. 2d at 153, 266 N.E. 2d at 561. Likewise, herein, there is nothing in R.C. 5701.08(A) that would support a finding that the "construction in progress" exception for machinery and equipment does not apply to the acquisition of the used presses here. Machinery and equipment are not "used in

business" until they are actually installed, operating, or capable of operation. *Hatchadorian* v. *Lindley* (1986), 21 Ohio St. 3d 66, 69, 21 OBR 365, 367-368, 488 N.E. 2d 145, 147; *Foote Mineral Co.* v. *Porterfield* (Sept. 9, 1971), BTA No. 70-09-3222; *Hydraulic Press Brick Co.* v. *Collins* (July 6, 1976), BTA Nos. D-180 to D-182.

Here, the presses were not installed, were not in operation, nor were they capable of operation. As soon as the joint operating agreement was approved, the Enquirer immediately began dismantling the presses. They were neither kept nor maintained as part of taxpayer's plant. Furthermore, Enquirer had no use for these letter press parts since they were incompatible with its newly acquired modern offset printing presses. The letter presses were not kept on hand as part of Enquirer's operations in Ohio. In fact, upon being dismantled they were prepared for storage in Kentucky. Meanwhile, the presses have not been used by Enquirer as part of its newspaper publication business here in Ohio. Although one of the presses was eventually transferred to another operation owned by Gansat in California, it was not a newspaper owned by the taxpayer, the Enquirer. Finally, even assuming some possible future uses of the presses by the parent were relevant in determining taxability here, as machinery and equipment, they would not have been subject to taxation under R.C. 5701.08(A) until they were "installed and in operation or capable of operation" in whatever business for which they were acquired.

## II

We next consider whether R.C. 5711.18 requires that Enquirer's (the taxpayer's) Schedules 2 and 4 taxable property be assessed for taxation based on its true value as determined by application of the Tax Commissioner's 302 Computation, or whether taxation must be based on its depreciated book value, an amount which exceeds its true value by $402,721.

R.C. 5711.18 reads in pertinent part:

"* * * In the case of personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money. Claim for any deduction from * * * depreciated book value of personal property must be made in writing by the taxpayer at the time of making his return * * *."

The correct understanding of R.C. 5711.18 is that depreciated book value is true value unless the commissioner makes a reasonable and proper finding that true value is other than depreciated book value. *Monsanto Co.* v. *Lindley* (1978), 56 Ohio St. 2d 59, 10 O.O. 3d 113, 381 N.E. 2d 939. The commissioner here determined on audit that the true value of taxpayer's depreciable property is best determined by proper application of the 302 Computation, but then inconsistently ignored the correct determination of true value and wrongfully concluded that the *ad valorem* assessment be based on depreciated book value, an amount greater than true value.

The commissioner relies on *Willys-Overland Motors, Inc.* v. *Evatt* (1943), 141 Ohio St. 402, 25 O.O. 543, 48 N.E. 2d 468, in contending the Enquirer has waived its right to question the book value. In *Willys-Overland Motors,* this court held that a "taxpayer is given the privilege of questioning his own book

value provided he does so in writing at the time of making his return. Otherwise, such privilege is waived." *Id.* at 406, 25 O.O. at 545, 48 N.E. 2d at 473. However, there are substantial differences between *Willys* and the case presently before us. In *Willys,* the taxpayer took the depreciated book value of its property as its true value for taxation, and accordingly paid the taxes. Years later, the taxpayer sought a refund by then alleging that its property's true value was not equal to, and was in fact less than, the depreciated value.

The taxpayer herein never intended to use depreciated book value as the basis for filing its 1980 and 1981 returns. Upon filing the original return, the taxpayer attempted to use the commissioner's 302 Computation but erroneously used the wrong percentage figure. Certain Schedule 2 and Schedule 4 computer equipment was mistakenly valued using Class IV rather than the correct Class II percentages. The taxpayer notified the commissioner of its error and promptly submitted an amended computation using the Class II percentages. Therefore, the taxpayer did question the validity of using depreciated book value as true value in the original return by using the prescribed 302 Computation to value the property rather than its depreciated book value. The taxpayer put the commissioner on notice and made a written claim in its returns that the best way to determine true value was by applying the 302 Computation.

The commissioner further alleges the procedural issue centers on the proper filing of a 902 form. However, the date of filing was prior to the adoption of Ohio Adm. Code 5703-3-10(c), effective February 21, 1986. Therefore, the commissioner did not have a "rule" stating her position regarding compliance with R.C. 5711.18. Moreover, the Department of Taxation has never required that a 902 form be filed in order to make a valid written claim for deduction from depreciated book value.

In a similar case, *Sun Chemical Corp.* v. *Lindley* (Nov. 12, 1980), Hamilton App. No. C-790638, unreported, the Tax Commissioner had testified before the BTA that the 902 form "was not called for by the statute" and that the department did not therefore insist that a taxpayer utilize this particular form. The commissioner further expressed that if the corporate taxpayer reported the depreciated book value of its Schedule 2 and 4 property in the return and listed a true value that was below the depreciated book value, this would be accepted as a valid written claim for deduction from depreciated book value within the meaning of R.C. 5711.18. (BTA transcript in *Sun Chemical Corp.* v. *Lindley* [Nov. 21, 1977], case No. F-918, at 85.)

The Court of Appeals for Hamilton County ruled that the taxpayer, Sun Chemical, had put the commissioner on notice that it did not consider depreciated book value of its property to be the true value. In reaching this conclusion the court stated that it is reasonable to assume that no taxpayer is going to return any higher value for his property than the law requires. To conclude otherwise would be an unreasonable adherence to form, especially when the commissioner instructs the taxpayer that he can claim a value other than book value on the schedules. *Id.* at 3.

Likewise, in the case before this court, the taxpayer's property should not be taxed at an amount greater than its true value, simply because the amount originally reported through an erroneous application of the 302 Com-

putation exceeded the depreciated book value. By utilizing a method prescribed by the commissioner for more than thirty years, see *Monsanto, supra,* at 60, 10 O.O. 3d at 113, 381 N.E. 2d at 940, namely the 302 Computation, the taxpayer attempted to "list" the true value of its taxable property. At the time the original return was filed, as well as amended, the commissioner had not prescribed by rule how a claim for deduction from depreciated book value was to be made. Therefore, the amended 302 Computation did constitute a proper claim for deduction from depreciated book value, and as such it was not waived.

In conclusion, we affirm the BTA's ruling that certain presses owned by the taxpayer and situated in Ohio on tax listing day were not subject to the Ohio *ad valorem* property tax (R.C. 5709.01) because, as explained above, the presses were not "used in business" in Ohio within the meaning of R.C. 5701.08(A).

Furthermore, we also affirm the BTA in holding that when a taxpayer uses the 302 Computation to value depreciable property required to be "listed" in a return, and the commissioner discovers that the true value of the property should be computed by application of the 302 Computation, a taxpayer is not required to file a separate written claim for deduction despite the fact that a correct application of the 302 Computation would result in a true value that is less than the depreciated book value.

Accordingly, the decision of the BTA is affirmed.

*Decision affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., dissents.