## MCI Telecommunications Corp. v. Limbach
### [Cite as 7 AOA 433]

*Case No. 89AP-870*
*Franklin County, (10th)*
*Decided September 20, 1990*

*John C. Duffy, Jr., Jones, Day, Reavis & Pogue, for Appellant.*

*Anthony J. Celebrezze, Jr., Attorney General, and James C. Sauer, for Appellee.*

REILLY, P.J.

Appellant, MCI Telecommunications Corporation ("appellant"), successor by merger to MCI Leasing, Inc. ("MCI Leasing"), appeals from the judgment of the Ohio Board of Tax Appeals ("board") affirming and modifying the order of appellee, Joanne Limbach, Tax Commissioner of Ohio ("appellee"), concerning personal property tax assessments for the tax years 1981 and 1982.

During the time in question, MCI Leasing was the wholly owned subsidiary of appellant.

MCI Leasing acquired telecommunications equipment which was then leased by appellant and integrated into its long distance telecommunications system. As MCI Leasing was the owner of the property, it was required to file an Ohio personal property tax return. This case concerns taxes assessed on equipment owned by MCI Leasing and located in Ohio during the 1981 and 1982 tax years.

Appellant appeals from the judgment of the board asserting the following assignments of error:

"I. The BTA erred in failing to find that point to point microwave radio equipment owned by leasing and situated in Ohio on the tax listing date is not 'used in business' within the meaning of Ohio Rev. Code §5701.08(A) when such property was not 'capable of operation' because a license to operate the equipment had not been issued by the FCC.

"II. The BTA abused its discretion in rejecting an opinion of value for Leasing's taxable personal property based on an appraisal utilizing a unit approach to value.

"III. The BTA erred in failing to state in its decision and order what evidence it considered relevant in concluding that Leasing's taxable property should be valued by application of the '302 Computation' Class II annual allowances."

The first assignment of error involves five microwave radio transmission and receiving facilities. The parties have stipulated that none of the facilities were licensed to operate by the Federal Communications Commission ("FCC") on the tax listing date for the tax year 1981 and that only three of the facilities were licensed by the tax listing date for 1982. Appellant maintains that, as these facilities were legally incapable of operation, they did not qualify as taxable personal property under R.C. Chapter 5709.

R.C. 5709.01(B) (1) provides that "[a]ll personal property located and used in business in this state *** [is) subject to taxation ***." R.C. 5701.08 defines the term "used in business" and designates four general classes of personal property considered to be used in business and thus subject to taxation.

R.C. 5701.08 reads in pertinent part:

"(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand an material, parts, products, or merchandise. Machinery and equipment classifiable upon completion as personal property while under construction or installation to become part of a new or existing plant or other facility is not considered to be 'used' by the owner of such plant or other facility within the meaning of 'used in business' until such machinery and equipment is installed and in operation or capable of operation in the business for which acquired. ***"

As the facilities in question were as yet unlicensed by the FCC, they were not placed in operation as a part of appellant's telecommunications system. The facilities were, however, installed and physically capable of operation pending only the grant of a license to operate. Appellant maintains that the facilities were legally incapable of operation within the meaning of R.C. 5701.08 until such time as an FCC license to operate was granted. The board rejected this argument, finding that the exclusion applied only to property physically incapable of operation.

Statutory language is given its plain and ordinary meaning, *Provident Bank v. Wood* (1973), 36 Ohio St. 2d 101. The word "capable" is synonymous in this context with the word "capability," which is defined as being "able, fit or adapted for" or "processing legal power or capacity." Black's Law Dictionary (5 Ed. 1979) 188; see, also, Webster's Third New International Dictionary (1986) 330. Given its plain and ordinary meaning, the word "capable" may refer to either physical or legal capability.

Moreover, this definition is consistent with the legislative intent behind the enactment and amendment of R.C. 5701.08. Ultimately, only personal property "used in business" is subject to taxation. R.C. 5701.08 serves only to further define the term "used in business." In *Standard Oil Co. v. Glander* (1951), 155 Ohio St. 61, the court held that equipment acquired for business purposes was "used in business" and subject to taxation even though the equipment was then being installed as an addition to a plant otherwise capable of operation. Two years later, the General Assembly amended R.C. 5701.08 "to exclude construction in progress from taxation." *Pfizer v. Porterfield* (1971), 25 Ohio St. 2d 5, 9. After the amendment, the statute clearly indicated that equipment while under construction

or installation to become part of a new or existing plant is not "used in business" until it is placed in operation or capable of operation. *Id.* In amending R.C. 5701.08, the General Assembly intended to exclude from taxation newly acquired personal property not yet capable of contributing to the business enterprise for which it was acquired. The issue is not whether the equipment is capable of operation in the abstract, but whether it is capable of operation or use in the business for which it was acquired.

Focusing on the equipment's intended use, rather than the equipment alone, is also consistent with other Supreme Court cases on this subject. Where equipment is capable of operation or use in the taxpayer's business, but is currently idle or held in reserve, the equipment is nevertheless capable of operation and thus used in business within the meaning of R.C. 5701.08. *Syro Steel Co. v. Kosydar* (1973), 34 Ohio St. 2d 9. On the other hand, where otherwise operable equipment is obsolete and of no use to the taxpayer, and is retained only for disposal, that equipment is not capable of operation in the business for which is acquired and is not subject to taxation. *Gannett Satellite Information Network, Inc. v. Limbach* (1989), 45 Ohio St. 3d 148.[1]

The microwave transmission and receiving facilities in this case were not capable of operation in the business for which they were acquired. Likewise, the facilities were neither used, nor capable of being used, in appellant's business until the FCC licenses were granted. Newly installed and otherwise operable equipment which is nevertheless incapable of operation in the business for which it is acquired due to a regulatory impediment is not used in business within the meaning of R.C. 5701.08(A).

In the alternative, the board noted that the taxpayer was not engaged in the telecommunications business, but was engaged in the business of leasing telecommunications equipment. Appellee relies on *Equilease Corp. v. Donahue* (1967), 10 Ohio St. 2d 81, which held that leased equipment is used in business within the meaning of the statute by both the lessee and the lessor. Appellee maintains that, even though appellant was unable to operate the equipment due to the lack of an FCC license, this did not prevent MCI Leasing from leasing the equipment and thus using it in their business.

Appellee's reliance on *Equilease, supra,* is misplaced. "*** That case merely stands for the proposition that a lessor of leased property is the proper entity to be taxed on such property. ***" *CC Leasing Corp. v. Limbach* (1982), 23 Ohio St. 3d 204, 207. The issue in *CC Leasing* concerned the taxation of nuclear fuel assemblies leased by the taxpayer to an electric company. Had the property been owned by the electric company, it would have been taxed at its full value pursuant to R.C. 5711.22(C), as property used for the generation of electricity. The taxpayer-lessor argued that it was engaged in the leasing business and was not subject to the one hundred percent listing requirements applicable to equipment used for the generation of electricity. Finding that the taxpayer's position would allow a utility company to avoid the appropriate tax burden by leasing all its equipment, the court concluded that the property's ultimate use was determinative with regard to R.C. 5711.22. Thus, the property was ultimately used for the generation of electricity regardless of whether it was owned or leased by the electric company.

Although the court did not directly address R.C. 5701.08 in *CC Leasing,* this court finds the rationale contained therein to be equally applicable to this case. Like *CC Leasing,* the issue in this case is whether the property was used in the leasing business or the telecommunications business. If the ultimate use test announced in *CC Leasing* is applicable to determining whether property is taxable, as well as to determining at what rate the property is subject to taxation, appellee's argument is not convincing. See *Mid-Ohio Chemical Company v. Limbach* (Feb. 17, 1987), Fayette App. No. CA86-04-002, unreported.

*CC Leasing, supra,* reflects a judgment that the status of property, whether owned or leased, should not affect the tax burden imposed on that property. As property may be used differently by the lessor and lessee, the court held that the property's ultimate use was controlling for tax purposes. In this case, the property was ultimately intended for use in the telecommunications business. During the relevant tax years, however, the property was incapable of operation or use for that purpose. As a result, the microwave receiving and transmission facilities were not used in business within the meaning of R.C. 5701.08.

Appellant's first assignment of error is well-taken.

In the second assignment of error, appellant contends that the board abused its discretion in

rejecting the appraisal and testimony of appellant's expert witness, John E. Green. The appraisal concerned the true value of analog interexchange switches, analog multiplex equipment and analog microwave radio facilities. Appellant offered testimony that, due to the rapid technological changes in the communications industry, the analog equipment was obsolete and virtually without value soon after the tax years in question.

In order to establish an accurate true value for the property, appellant offered the appraisal of John Green. He testified that he considered several different valuation methods before choosing the unit approach to value. The board in its decision and order stated that Green did not demonstrate the degree of competency, integrity, skill and credibility necessary for the board to accept his opinion on value. In rejecting the appraisal as competent evidence of value, the board pointed to a number of fundamental problems in Green's appraisal and method. Each of the parties to this appeal have also devoted large parts of their briefs to arguments supporting or questioning Green's appraisal and method.

"The Board of Tax Appeals is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board. ***" *Cardinal Federal S&L Assn. v. Bd. of Revision* (1975), 44 Ohio St. 2d 13, at paragraph three of the syllabus. In its discretion, the board "is not required to adopt the valuation fixed by any expert or witness." *Id.* paragraph two of the syllabus. "The fair market value of property is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Bd. of Revision v. Fodor* (1968), 15 Ohio St. 2d 52, syllabus.

This court does not engage in a *de novo* review of disputed appraisals and testimony. Our function is to review the board's decision and reasoning and determine if the board's findings are unreasonable or contrary to law. Whereupon, the court concludes that the board's rejection of the appraisal as competent evidence of the property's true value was a reasonable and lawful exercise of the board's inherent discretion.

Appellant's second assignment of error is not well-taken.

The third assignment of error also concerns the valuation of the analog communications equipment considered in the second assignment of error. The tax commissioner used the "302 computation" in order to place a value on the property. This method of valuation involves the application of predetermined rates of depreciation to the property's original cost or book value. The resulting figure is known as depreciated book value, and is statutorily presumed to be the property's true value unless shown otherwise. When using the 302 computation, the tax commissioner refers to a set of published guidelines which assign property to a specific business activity. Each is then assigned to a composite group-life class from which the applicable rate of depreciation is calculated.

In this case, appellee determined that appellant's property was most appropriately placed in group (48) communications. Group (48) is described in the guidelines as "radio and television broadcasting and cablevision." Group (48) property is assigned to composite group class III which translates into a group life range of 8.4 to 11.6 years. Appellant maintains that, due to the high rate of technological obsolescence in the telecommunications industry, the analog equipment has a group life of less than 8.4 years and, consequently, is overvalued by the 302 computation.

The tax commissioner is authorized to make use of the 302 computation in determining the true value of personal property by R.C. 5711.18 and Ohio Adm. Code 5703-3-10 and 11. The Supreme Court has recognized the *prima facie* quality of the 302 computation when used by the tax commissioner to determine the true value of personal property used in business. *Alcoa v. Kosydar* (1978), 54 Ohio St. 2d 477, 480; citing *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71. In *PPG Industries v. Kosydar* (1981), 65 Ohio St. 2d 80, the court, considering the 302 computation, held in the syllabus, as follows:

"1. In assessing the taxable inventory of a manufacturer, the Tax Commissioner in arriving at the true value of such property, pursuant to R.C. 5711.18 and 5711.21, must consider all competent evidence indicating that the depreciated book value is greater or less than the true value in money.

"2. In determining the true value in money of machinery and equipment for tax assessment

purposes, the Tax Commissioner in applying the '302 Computation' directive which prescribes an annual depreciation rate in lieu of book depreciation must adjust such rate not only in unusual or special circumstances but also whenever it appears that rigid application of the directive will create an unjust or unreasonable result."

Further, the burden is on the taxpayer to show that the 302 computation does not accurately reflect the true value of its personal property. *Gahanna Heights, Inc. v. Porterfield* (1968), 15 Ohio St. 2d 189. Under *PPG Industries,* there are two ways in which the taxpayer may contest the commissioner's valuation. The taxpayer may either offer direct evidence of the property's true value or the taxpayer may offer evidence that the applicable rate of depreciation does not accurately measure the property's true value, either because special or unusual circumstances exist or because a rigid application of the directive will create an unjust or unreasonable result. *PPG Industries, supra.* See, also, *Hatchadorian v. Lindley* (1986), 21 Ohio St. 3d 66, 71.

Appellant offered the appraisal of John Green as alternative evidence of the property's true value. This evidence was, however, rejected by the board as indicated above. Moreover, appellant offered the testimony of three other witnesses who discussed appellant's telecommunications system and the high rate of technological change associated with it. The witnesses also testified that telecommunications equipment was not analogous to broadcasting equipment as the rate of technological obsolescence was much greater in the telecommunications industry.

The board found the foregoing testimony to be both competent and credible. The board also determined that special and unusual circumstances existed which required deviation from the standard class III category. The board's decision then stated that, "*** [b]ased upon the totality of the evidence, the Board finds and determines that a Class II annual percentage used in conjunction with the 302 computation is the proper means of determining true value of the subject property for the tax years 1981 and 1982."

The board cited sufficient evidence in support of its finding that special and unusual circumstances existed requiring a deviation from the standard rate of depreciation for communications equipment. The board did not, however, cite any specific evidence in support of

its decision to apply Class II allowances as opposed to some other rate of depreciation. In *Howard v. Cuyahoga Cty. Bd. of Revision* (1988), 37 Ohio St. 3d 195, 197, the Supreme Court held that the board must "*** state what evidence it considered relevant in reaching its value determinations ***" On remand, the board must either rely on an appraisal of the property's true value or on evidence indicating the manner and extent to which the Class III allowances overstate the composite group life of appellant's property. *Hatchadorian, supra.* A detailed analysis is not required, but there must be some evidence supporting the board's choice of an alternative composite group life class with which to value the subject property.

The third assignment of error is well-taken.

Appellant's second assignment of error is overruled. Appellant's first and third assignments of error are sustained, and the cause is remanded to the Board of Tax Appeals for further proceedings consistent with this opinion.

*Judgment reversed and*
*cause remanded.*

STRAUSBAUGH and WINKLER, J.J., concur.

WINKLER, J., of the Hamilton County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

---

[1] The, board correctly concluded, however, that certain obsolete analog switching systems were capable of operation and used in business as they were retained by the company as reserve or emergency equipment.