JACOB B. SWEENEY EQUIPMENT TRUST, Appellant,

v.

LIMBACH, Tax Commr., Appellee.

[Cite as *Jacob B. Sweeney Equip. Trust v. Limbach* (1991), 74 Ohio App.3d 82.]

Court of Appeals of Ohio,
Butler County.

No. CA90–07–130.

Decided May 13, 1991.

*Jones, Day, Reavis & Pogue* and *Roger F. Day,* for appellant.

*Lee I. Fisher,* Attorney General, and *James C. Sauer,* Assistant Attorney General, for appellee.

WILLIAM W. YOUNG, Judge.

Appellant, Jacob B. Sweeney Equipment Trust ("Sweeney"), appeals from the decision of the Ohio Board of Tax Appeals ("BTA") affirming an order of appellee, Joanne Limbach, Tax Commissioner of Ohio ("Tax Commissioner"), concerning personal property tax assessments for the 1986 tax year. The primary issue for review is whether the Tax Commissioner and the BTA properly determined the true value of a mainframe computer owned by Sweeney and leased to Armco, Inc.

In 1981, Sweeney purchased an IBM Model 3081 computer for the purpose of leasing it to Armco. The purchase price for the computer was $4,018,932. In November 1981, a lease agreement was entered into between Sweeney and Armco. The term of the lease was for eighty-four months commencing December 1, 1981 and continuing until November 30, 1988, at a monthly rental of approximately $60,000. Under the lease agreement, Armco could acquire and install, at its own expense, additional features and options for the computer. During the period of the lease Armco did, in fact, upgrade the

computer. In 1983, Armco made $700,000 in improvements to make the machine run faster.

In 1985, IBM introduced the Model 3090 computer. The new IBM computer ran roughly three times faster than the computer leased to Armco. The introduction of IBM's new computer dramatically lowered the value of the Model 3081 computer. Although the market value for the computer owned by Sweeney dropped dramatically in 1986, Sweeney's lease agreement with Armco still entitled it to receive approximately $2,000,000 more in monthly rentals from Armco.

In filing its tax return for the 1986 tax year, Sweeney included a "902 claim" for reduction of the book value of the Model 3081 computer to $669,822. The Tax Commissioner refused to accept the value reported by Sweeney, and instead substituted a higher value of $1,591,718. The Tax Commissioner's valuation was arrived at by use of the commissioner's "302" computation method.[1]

Sweeney filed an application for review and redetermination, contending that the assessment did not reflect the true value of the computer. In its certificate of determination, the Tax Commissioner found that Sweeney did not present any information to rebut the presumptive validity of the "302" computation and, therefore, failed to meet its burden of demonstrating by competent evidence of probative value that the "302" computation produced a result which did not reflect the true value of the computer.

Sweeney filed a notice of appeal to the BTA, which scheduled and held an evidentiary hearing. On June 8, 1990, the BTA issued its decision affirming the final order of the Tax Commissioner. The BTA found that the Tax Commissioner's determination of value was prima facie reasonable and lawful, and that Sweeney failed to adequately establish a different value.

Sweeney appeals the BTA decision and submits the following four assignments of error for review:

Assignment of Error No. 1:

"The Tax Commissioner's valuation method, known as the '302' computation, overvalues the appellant's computer equipment."

Assignment of Error No. 2:

"Special and unusual circumstances make the application of the '302' computation improper and inaccurate."

---

1. The "302" computation is a formula which determines value by applying a predetermined annual depreciation rate to the computer's original cost. The annual depreciation rate of Sweeney's computer was approximately ten percent based on its eight-year useful life.

Assignment of Error No. 3:

"Application of the '302' computation creates an unreasonable result when the computer's market value was proved to be $925,000 and not $1,591,-718.00."

Assignment of Error No. 4:

"The Board of Tax Appeals decision is against the manifest weight of the evidence."

Sweeney's first three assignments of error all are related to the issue of whether the BTA erred in determining the true value of its computer. Sweeney contends that the fair market value of the computer should apply rather than the "302" computation method because the best method for determining the true value of personal property is through the actual sale of the property in an open market.

Sweeney offered testimony that, due to the rapid technological advancements in the computer industry, the computer equipment in question was virtually obsolete and its market value had dramatically decreased. David Andrews, Executive Vice President of a Cincinnati business that focuses on the leasing of computer equipment, testified that he is often called upon to estimate market values of computer equipment for various purposes and the primary evaluation source he uses is Computer Price Watch. Based on his research, Andrews estimated that the fair market value of Sweeney's computer as of January 1, 1986, was approximately $1,000,000 at retail price and $925,000 at wholesale price.[2] Sweeney argues that since the fair market value of computers of this type is readily obtainable, the $925,000 fair market value should apply rather than the value derived by the application of the arbitrary "302" computation.

R.C. 5709.01 authorizes the taxation of personal property "used in business." That section states, in pertinent part, that "all personal property located and used in business in this state * * * [is] subject to taxation * * *." R.C. 5711.18 sets forth the manner in which personal property used in business shall be listed and valued as follows:

" * * * In the case of personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the true value of such property in money."

---

2. Andrews testified that the wholesale price is the price at which Sweeney could have sold its computer had it offered it for sale. The retail price is the price at which a dealer could sell the computer to an end user.

The specific language of this section provides the Tax Commissioner with the duty of determining the true value of personal property used in business. In order to promote industry-wide uniformity in determining the true value of depreciable property used in business, the Tax Commissioner established the "302" computation directive. Essentially, the "302" computation uses a straight-line depreciation schedule with the application of a depreciation rate to the original cost of the personal property.

The "302" depreciation rate table is treated as prima facie evidence of a piece of property's true value by Ohio courts. *Tele–Media Co. v. Lindley* (1982), 70 Ohio St.2d 284, 24 O.O.3d 367, 436 N.E.2d 1362; *Monsanto Co. v. Lindley* (1978), 56 Ohio St.2d 59, 10 O.O.3d 113, 381 N.E.2d 939. Moreover, the burden is on the taxpayer to show that the rate of depreciation arrived at under the "302" computation directive does not reflect the true value of its personal property. *Westinghouse Elec. Corp. v. Lindley* (1980), 64 Ohio St.2d 31, 18 O.O.3d 212, 413 N.E.2d 1178; *Gahanna Heights, Inc. v. Porterfield* (1968), 15 Ohio St.2d 189, 44 O.O.2d 156, 239 N.E.2d 30. There are two ways in which a taxpayer may contest the commissioner's evaluation. *PPG Industries v. Kosydar* (1981), 65 Ohio St.2d 80, 19 O.O.3d 268, 417 N.E.2d 1385. The taxpayer may either (1) offer direct evidence of the property's true value, or (2) offer evidence that the applicable rate of depreciation does not accurately measure the property's true value, either because special or unusual circumstances exist or because a rigid application of the directive will create an unjust or unreasonable result. *Id.* at 83, 19 O.O.3d at 270, 417 N.E.2d at 1388.

Sweeney submits that it has met its burden through the use of testimony which indicates that the fair market value of the computer equipment is $925,000. Sweeney argues that this court should accept the principle that the best method in determining true value of personal property is the actual sale of such property in an open market and at arm's length, between one who is willing, but not compelled, to sell; and one who is willing, but not compelled, to buy. *Grabler Mfg. Co. v. Kosydar* (1975), 43 Ohio St.2d 75, 72 O.O.2d 42, 330 N.E.2d 924.

We must reject Sweeney's assertion. Ohio case law has consistently held that when no arm's-length sale has taken place, the Tax Commissioner need not consider the fair market value of the personal property when determining the property's true value. *CC Leasing Corp. v. Limbach* (1986), 23 Ohio St.3d 204, 23 OBR 364, 492 N.E.2d 421; *Columbus Bd. of Edn. v. Fountain Square Assn., Ltd.* (1984), 9 Ohio St.3d 218, 9 OBR 528, 459 N.E.2d 894. In the case *sub judice*, there was no evidence in the record to indicate that Sweeney wanted or was able to sell the computer equipment to a third party

at a price warranted by its decreased value. In explaining its reasons for why the fair market test should not be used, the Supreme Court held that:

"Where an article is not put on the market for sale but is instead leased by the owner to another for valuable consideration, it should be taxed to such owner at its true value in money—'the value that attaches to it in his hands.' *State, ex rel., v. Halliday* (1889) [ (1899) ], 61 Ohio St. 352 [56 N.E. 118] paragraph two of the syllabus. We again hold that '[i]n ascertaining the true value in money of such property in the hands of its owner, every fact or circumstance, brought to the attention of the person or officer who is charged with the duty of fixing that value, and which in its nature bears on the question, should be considered by him. One of those circumstances is the earnings or rental of such article.' *Id.* at paragraph three of the syllabus." *CC Leasing, supra,* at 208, 23 OBR at 367, 492 N.E.2d at 425.

In the instant action, it appears the Tax Commissioner and the BTA considered the rental earnings of the computer in determining its true value. Even assuming that the market value of the Model 3081 computer had dropped to $925,000 in 1986, the lease agreement between Sweeney and Armco still entitled Sweeney to receive over $2,000,000 in rental payments from December 31, 1985 to November 23, 1988.

Apparently, the Tax Commissioner, having considered the value attached to the computer in Sweeney's hands, determined that the computer was worth substantially more in the hands of Sweeney than the estimated fair market value represented by Sweeney. The BTA considered Sweeney's argument that the fair market value standard should apply rather than the "302" computation method, but found that such a value did not truly represent the real value of Sweeney's computer.

It is not the function of this court to substitute its judgment for that of the BTA on factual issues pertaining to the fair market value of property for tax purposes. *Monsanto, supra,* 56 Ohio St.2d at 63, 10 O.O.3d at 115, 381 N.E.2d at 942. The revisory jurisdiction of this court is limited to determining whether the decision of the BTA is reasonable and lawful. R.C. 5717.04; *Alcoa v. Kosydar* (1978), 54 Ohio St.2d 477, 8 O.O.3d 459, 377 N.E.2d 785. Our careful review of the record indicates that the decision of the BTA, in affirming the Tax Commissioner's determination of true value for Sweeney's computer equipment for the 1986 tax year, was neither unreasonable nor unlawful. Accordingly, Sweeney's first, second, and third assignments of error are overruled.

Sweeney argues in its fourth assignment of error that the decision of the BTA is against the manifest weight of the evidence. Specifically, Swee-

ney contends that the BTA approved valuing the computer by the "302" method principally because the computer had been modified by upgraded equipment two years after the original lease was executed. However, Sweeney asserts, and the Tax Commissioner does not dispute, that this upgrade equipment was the subject of a second lease to Armco by a different lessor, and the personal property tax was paid separately by the other lessor on the upgrade equipment.

The party appealing the decision of the BTA has the duty to prove its right to a reduction in value. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 202, 527 N.E.2d 874, 878. We do not believe that this burden has been met. The BTA did, in fact, consider the upgrade equipment when making its determination on the true value of the computer equipment. Nevertheless, the record shows that the consideration of the upgrade equipment did not have an effect on the end result. As we have previously stated, the BTA considered the testimony of Sweeney's witnesses relative to their views on the true value of the computer equipment. However, the BTA determined that their opinions of the computer's value were not as reasonable and realistic as that found by the Tax Commissioner. Moreover, the Tax Commissioner's computation of true value was not based on any inclusion of upgrade costs. The commissioner, instead, considered the lease and its benefits to Sweeney. We agree with the Tax Commissioner's assertion that any misunderstanding which the BTA may have had with respect to the matter of upgrade costs was irrelevant to the Tax Commissioner's determination of true value.

Having reviewed the record, we find sufficient probative evidence to support BTA's findings, and accordingly will not overrule those findings. We conclude that the decision of the BTA was neither unreasonable, unlawful, nor against the weight of the evidence. *Crow v. Cuyahoga Cty. Bd. of Revision* (1990), 50 Ohio St.3d 55, 552 N.E.2d 892. Sweeney's fourth and final assignment of error is therefore overruled.

*Decision affirmed.*

JONES, P.J., and WALSH, J., concur.